## Muir *v.* Thompson Coal Company, Inc., Appellant.

Argued March 20, 1967. Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

F. *Cortez Bell,* with him *Bell, Silberblatt & Swoope,* for appellant.

*David L. Baird,* with him *Baird, McCamley & Miller,* for appellee.

OPINION BY WATKINS, J., April 12, 1967:

This is an appeal from the judgment of the Court of Common Pleas of Clearfield County in an action in assumpsit on a coal lease.

The parties stipulated the facts and as they relate to the issue in this appeal are as follows: In 1949 the plaintiffs-appellees, Ruth Muir, in her own right and as agent for the heirs of Jonathan Emigh, or their predecessors in title, leased to defendant, or its predecessors in title, a tract of land for the purpose of mining coal and clay therefrom. The lease provided for royalties of 20¢ per ton on coal mined and removed and 15¢ per ton on clay mined and removed; that the lessee agreed to remove the same in such quantities as to sustain royalties at fixed rates or at least $25 per month. Failing to mine this tonnage said sum of $25 monthly was to be paid as a minimum royalty.

The lease did not contain any agreement as to recoupment of minimum royalty. The lease was to continue to exhaustion of the minerals or so long as coal and clay contained in the land remained marketable. The royalty payments were not only for the minerals but for the disturbance of the surface and any other damages to the land. The only termination clause in the lease read as follows:

"If after reasonable operation it is found that the coal and clay is not of sufficient quantity or of marketable value to continue operations, then the parties of

the second part (lessees) may so notify the parties of the first part (lessor) and thereafter this lease shall be terminated. Such notice shall be in writing and addressed to Mrs. Ruth Muir at West Decatur and shall be given 60 days before such termination, during which period the lessees shall pay a minimum royalty and continue to remove minerals if they so desire."

There is no complaint in this appeal concerning tonnage or amount of money involved in the judgment so that it is unnecessary for these matters to be discussed. Minimum royalties were paid to the appellees from the inception of the lease on June 30, 1949, until September 1963. During that time no mineral was removed. Mining began in September and during several months 15,776.53 tons of coal were removed.

The only issue involved in this appeal is whether, where a coal lease grants the right to remove the minerals to exhaustion and provides a minimum monthly royalty with no mention in the lease of a right to recoupment, is the lessee permitted to offset minimum royalties already paid when due and when no mineral was mined, against royalties due for coal mined in later months in excess of the minimum? As the court below well stated: "Thus custom and usage would seem to favor the lessee who took the pain and effort to definitively set forth his right of recoupment. Generally minimum royalty provisions are based on the proposition that the coal was in existence and can be profitably removed through proper efforts made. Therefore, they serve as incentives for compliance with the duty of performing adequately and promptly." When it is the intention of the parties, the right of recoupment of minimum royalties must be inserted in the contract. *Leh. V. C. Co. v. Coxe Bros. & Co., Inc.*, 327 Pa. 23, 192 A. 658 (1937).

In *Woodruff v. Gunton*, 222 Pa. 384, 71 A. 851 (1909), there was involved the right to credit subse-

quent fixed rate royalties against prior minimum royalties. The Supreme Court held that the minimum royalties were due and payable despite the fact that prior payments of the minimum amounted to a sum greater than the coal mined at a fixed rate. In the instant case there is presented the question of whether prior minimum royalties paid may be credited against fixed rate royalties on coal subsequently mined.

We agree with the appellant's contention that the agreement here involved is a sale of coal in place. *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A. 2d 227 (1943). But we do not agree with the appellant's contention that because it is a sale of coal in place that recompense must be allowed as one of the incidents of the sale. Although it is a sale of coal in place all of the usual incidents of sale do not apply to coal leases. *Denniston v. Haddock*, 200 Pa. 426, 50 A. 197 (1901). In the removal of coal to exhaustion there is always the possibility of reversion to the lessor.

Minimum royalties amount to a liquidated rent or penalty for the lessee's failure to mine the minimum tonnage. "Minimum royalty payments in coal leases have been interpreted by our Supreme Court as being in the nature of a penalty or a liquidated rental for property, whether or not the coal is mined, and they may not be applied to payment for the coal remaining in place unless expressly so provided." *Greenough v. Colonial Col. Co.*, 132 Pa. Superior Ct. 270, 275, 1 A. 2d 174, 176 (1938). In the instant case there is no attempt to claim credit for estimated coal in place.

In addition to minimum royalties being considered a penalty or liquidated rent, they may also be considered as part of the consideration of the sale of coal in place so that failure of minimum payments, whether liquidated rent, a penalty, or consideration may work a reversion of the ownership of the coal.

436

We agree with the court below that in this case the lessee may not offset minimum royalty payments against fixed royalties due for coal subsequently mined where no right of recoupment is set forth in the lease. The appellant must pay for the coal mined.

Judgment affirmed.